**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **DONNA GIFFORD**, on behalf of herself and others similarly situated, | : | |
| | : | |
| Plaintiff, | : | |
| | : | **CASE NO. 2:22-cv-4389** |
| v. | : | |
| | : | **JUDGE SARAH D. MORRISON** |
| **NORTHWOOD HEALTHCARE GROUP, LLC**, *et al.*, | : | |
| | : | **MAGISTRATE JUDGE CHELSEY M. VASCURA** |
| Defendants. | : | |

**PLAINTIFF'S PRE-DISCOVERY MOTION FOR CONDITIONAL
CERTIFICATION AND COURT-AUTHORIZED NOTICE TO
POTENTIAL OPT-IN PLAINTIFFS PURSUANT TO 29 U.S.C. § 216(b)**

Now comes Named Plaintiff Donna Gifford ("Named Plaintiff"), who respectfully moves the Court to enter an order pursuant to Section 216(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b):

(a)     Conditionally certifying this case as an FLSA collective action under Section 216(b) against Defendants Northwood Healthcare Group, LLC ("Defendant Northwood") and Garden Healthcare Group, LLC ("Defendant Garden") (collectively "Defendants") on behalf of Named Plaintiff and others similarly situated;

(b)     Directing that notice be sent by United States mail and email or text message as set forth below to the following collective:

> **All current and former hourly, non-exempt direct care employees of Defendants who had a meal break deduction applied to their hours worked in any workweek where they were paid for at least forty (40) hours of work, beginning three (3) years prior to the filing date of this Motion and continuing through the final disposition of this case.**

(c)     Approving the proposed Notice form informing such present and former employees of the pendency of this collective action and permitting them to opt in to the case by signing and submitting the proposed Consent to Join form;[1]

(d)     Directing Defendants to provide, within fourteen (14) days of an order granting conditional certification, a roster of all persons who fit the definition in Paragraph 2 (the "Potential Opt-In Plaintiffs") that includes their full names, dates of employment, locations worked, job titles, last known mailing addresses, cellular phone numbers, and personal email addresses (the "Roster"); and

(e)     Directing that the Court-approved Notice and Consent to Join forms be sent to such Potential Opt-In Plaintiffs within fourteen (14) days of receipt of the Roster using the Potential Opt-In Plaintiffs' home and email addresses. To the extent that less than two (2) methods of contact have been provided by Defendants for the putative collective members, the Court should allow the notice to be sent by (1) text message and (2) first class mail or email, whichever is available, so as to remain consistent with the tradition of notice by two methods.

A Memorandum in Support of this Motion, as well as supporting evidentiary exhibits, are attached.

Respectfully submitted,

**COFFMAN LEGAL, LLC**

*/s/ Matthew J.P. Coffman*
Matthew J.P. Coffman (0085586)
Adam C. Gedling (0085256)
Kelsie N. Hendren (0100041)
Tristan T. Akers (0102298)
1550 Old Henderson Rd.
Suite 126
Columbus, Ohio 43220

---

[1] Notice and Consent to Join forms are attached hereto as **Exhibit 1**.

Telephone: (614) 949-1181
Facsimile: (614) 386-9964
Email: mcoffman@mcoffmanlegal.com
      agedling@mcoffmanlegal.com
      khendren@mcoffmanlegal.com
      takers@mcoffmanlegal.com

## MEMORANDUM IN SUPPORT

Named Plaintiff respectfully requests that the Court grant conditional certification under 29 U.S.C. § 216(b) and order the issuance of notice to similarly situated persons, enabling them to opt in to this lawsuit pursuant to the FLSA. Named Plaintiff and other members of the proposed collective are non-exempt hourly healthcare employees who have not been paid wages and overtime wages for all hours worked. This case involves Defendants' companywide meal break deduction policies and/or practices. Named Plaintiff has submitted allegations and evidence that under these policies and/or practices, Defendants require a meal break deduction from their hourly, non-exempt healthcare employees' daily hours worked for meal breaks that are never taken, interrupted, or otherwise shortened due to the performance of substantive work duties. These policies and/or practices that require a meal break deduction deprives Defendants' hourly, non-exempt healthcare employees of their hard-earned overtime pay.

Accordingly, Named Plaintiff requests conditional certification of the following collective:

> **All current and former hourly, non-exempt direct care employees of Defendants who had a meal break deduction applied to their hours worked in any workweek where they were paid for at least forty (40) hours of work, beginning three (3) years prior to the filing date of this Motion and continuing through the final disposition of this case.**

## I.   STATEMENT OF THE CASE

On December 15, 2022, Named Plaintiff filed this collective and class action lawsuit to recover unpaid overtime wages owed to current and former employees of Defendants because of Defendants' FLSA violations. Defendants employ/employed Named Plaintiff and individuals who are similarly situated and eligible to join but who have not yet received notice and joined this case ("the Potential Opt-In Plaintiffs") at Defendants' locations throughout the State of Ohio.

This Motion is supported by the substantial allegations in Named Plaintiff's Complaint;[2] the participation of Named Plaintiff and the opt-in plaintiffs, namely, Jordan Bailey, Katara Brooks, Danette Charnetzky, Janet Finnell, Shalonda Gialluca, Natalie Harris, Shytikaa Knight, Hallee Lewis, Beverly Neely, Khadeza Pyfrom, Amber Riechers, Markita Terry, Carlyn Turner, and Lashawn Wade (collectively "Opt-In Plaintiffs"); the sworn declaration testimony of Named Plaintiff and seven (7) Opt-In Plaintiffs;[3] and several employee handbooks from different locations. Although these employees worked at different locations, they confirm that Defendants had companywide policies and/or practices of applying a meal break deduction to their daily hours worked that resulted in unpaid overtime wages.

As discussed below, this evidence is more than enough to meet Named Plaintiff's lenient, modest burden for conditional certification.

## II.   STATEMENT OF FACTS

### A.   Defendants' Companywide Unlawful Meal Break Deduction Policies and/or Practices Deprived Their Employees of Full, Uninterrupted Meal Breaks and Overtime Compensation to which They Were Entitled.

Opt-In Plaintiffs worked at different facilities throughout the State of Ohio. Regardless of where Opt-In Plaintiffs worked, however, they all experienced the same issue regarding unlawful meal break deductions.[4] At all relevant times, Defendants employ/employed Named Plaintiff and

---

[2] *See* ECF No. 1.

[3] Declaration of Donna Gifford (hereinafter "Gifford Decl."), Ex. 2; Declaration of Jordan Bailey (hereinafter "Bailey Decl."), Ex. 3; Declaration of Danette Charnetzky (hereinafter "Charnetzky Decl."), Ex. 4; Declaration of Janet Finnell (hereinafter "Finnell Decl."), Ex. 5; Declaration of Shytikaa Knight (hereinafter "Knight Decl."), Ex. 6; Declaration of Hallee Lewis (hereinafter "Lewis Decl."), Ex. 7; Declaration of Carlyn Turner (hereinafter "Turner Decl."), Ex. 8 (collectively "Declarants").

[4] *See, e.g.*, Whispering Hills Rehabilitation and Nursing Center Employee Handbook Effective January 2018 attached to Gifford Decl., Ex. 2; Legends Care Rehabilitation and Nursing Center Employee Handbook Effective January 2018 attached to Charnetzky Decl., Ex. 4.

Opt-In Plaintiffs (collectively "Plaintiffs") as non-exempt, hourly healthcare workers and paid

them on an hourly basis.[5] Plaintiffs were scheduled to work, or did work, forty (40) or more hours

in one or more workweek(s).[6] Defendants have a policy of requiring meal break deductions from

Plaintiffs that reduced their daily hours worked.[7] Frequently, Plaintiffs were unable to take their

meal breaks or, if they were able to begin their meal breaks, were unable to take full, uninterrupted

meal breaks because they were too busy, their facilities were understaffed, and/or they were

required to prioritize caring for patients.[8] Plaintiffs personally and directly worked with other

hourly healthcare employees who also were subjected to the same unlawful meal break deduction

policies and/or practices.[9]

When Plaintiffs did not take a full, uninterrupted meal break, Defendants still deducted a

full meal break period from their compensable time worked despite knowing that their healthcare

employees were regularly unable to take a meal break.[10] Moreover, Defendants did not adequately

---

[5] Gifford Decl., Ex. 2, ¶¶ 3, 6 (working at facilities for Defendant Northwood and Defendant Garden); Bailey Decl., Ex. 3, ¶¶ 3, 6 (working at a facility for Defendant Northwood); Charnetzky Decl., Ex. 4, ¶¶ 3, 6 (working at a facility for Defendant Northwood); Finnell Decl., Ex. 5, ¶¶ 3, 6 (working at a facility for Defendant Garden); Knight Decl., Ex. 6, ¶¶ 3, 6 (working at a facility for Defendant Northwood); Lewis Decl., Ex. 7, ¶¶ 3, 6 (working at a facility for Defendant Garden); Turner Decl., Ex. 8, ¶¶ 3, 6 (working at a facility for Defendant Northwood).

[6] *See* Gifford Decl., Ex. 2, ¶ 6; Bailey Decl., Ex. 3, ¶ 6; Charnetzky Decl., Ex. 4, ¶ 6; Finnell Decl., Ex. 5, ¶ 6; Knight Decl., Ex. 6, ¶ 6; Lewis Decl., Ex. 7, ¶ 6; Turner Decl., Ex. 8, ¶ 6.

[7] Gifford Decl., Ex. 2, ¶¶ 7–8; Bailey Decl., Ex. 3, ¶¶ 7–8; Charnetzky Decl., Ex. 4, ¶¶ 7–8; Finnell Decl., Ex. 5, ¶¶ 7–8; Knight Decl., Ex. 6, ¶¶ 7–8; Lewis Decl., Ex. 7, ¶¶ 7–8; Turner Decl., Ex. 8, ¶¶ 7–8.

[8] Gifford Decl., Ex. 2, ¶¶ 9–10; Bailey Decl., Ex. 3, ¶¶ 9–10; Charnetzky Decl., Ex. 4, ¶¶ 9–10; Finnell Decl., Ex. 5, ¶¶ 9–10; Knight Decl., Ex. 6, ¶¶ 9–10; Lewis Decl., Ex. 7, ¶¶ 9–10; Turner Decl., Ex. 8, ¶¶ 9–10.

[9] Gifford Decl., Ex. 2, ¶ 11; Bailey Decl., Ex. 3, ¶ 11; Charnetzky Decl., Ex. 4, ¶ 11; Finnell Decl., Ex. 5, ¶ 11; Knight Decl., Ex. 6, ¶ 11; Lewis Decl., Ex. 7, ¶ 11; Turner Decl., Ex. 8, ¶ 11.

[10] Gifford Decl., Ex. 2, ¶¶ 13–14; Bailey Decl., Ex. 3, ¶¶ 13–14; Charnetzky Decl., Ex. 4, ¶¶ 13–14; Finnell Decl., Ex. 5, ¶¶ 13–14; Knight Decl., Ex. 6, ¶¶ 13–14; Lewis Decl., Ex. 7, ¶¶ 13–14; Turner Decl., Ex. 8, ¶¶ 13–14.

train or inform Plaintiffs on what constituted a "bona fide" meal break under the FLSA.[11] As a result of Defendants' companywide pay policies and/or practices described herein, Plaintiffs were not paid overtime premium for all overtime hours worked.

## III.    LAW AND ARGUMENT

### A.    The FLSA Authorizes Collective Actions and Notice to Similarly Situated Employees.

The FLSA provides that an employer who violates the overtime requirement can be sued by the affected employees collectively. *See* 29 U.S.C. § 216(b). Moreover, where the employer's violations are alleged to be widespread, the FLSA affirmatively grants an aggrieved employee the right to bring an action "for and on behalf of himself . . . and other employees similarly situated," provided that the "opt in" plaintiffs file written consents with the court. *Id.* This pre-discovery motion requests the court's approval and circulation of the Notice of the pendency of this action to the Potential Opt-In Plaintiffs pursuant to Section 216(b) so they can timely exercise their "opt in" rights in this FLSA litigation. Under the FLSA, until a person affirmatively "opts in" by filing a written consent with the court, the statute of limitations on their FLSA claim continues to run.

In *Hoffmann-La Roche, Inc. v. Sperling*, the United States Supreme Court established that judicial notice to potential class members in FLSA collective actions is proper in "appropriate cases." 493 U.S. 165, 165 (1989). The Court construed Section 216(b) to empower the Court to supervise notice to those potential similarly situated employees about a pending collective action. *Id.* at 170. Commenting favorably upon collective actions, the Supreme Court noted:

> A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . .

---

[11] Gifford Decl., Ex. 2, ¶ 12; Bailey Decl., Ex. 3, ¶ 12; Charnetzky Decl., Ex. 4, ¶ 12; Finnell Decl., Ex. 5, ¶ 12; Knight Decl., Ex. 6, ¶ 12; Lewis Decl., Ex. 7, ¶ 12; Turner Decl., Ex. 8, ¶ 12.

> activity. These benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.

*Id.*

The lack of class-wide tolling of the statute of limitations in FLSA cases should cause the Court to favor providing notice to other similarly situated persons of their "opt in" rights at the earliest stage of the litigation. When a plaintiff brings a motion for conditional certification, "[t]ime is of the essence because 'the commencement of a collective action under § 216(b) does not toll the statute of limitations period for plaintiffs who have failed to opt-in.'" *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 867 (S.D. Ohio 2011) (Marbley, J.) (quoting *Musarra v. Dig. Dish, Inc.*, No. C2-05-545, 2008 WL 818692, at *2 (S.D. Ohio Mar. 24, 2008) (Marbley, J.)). Failing to provide such prompt notice frustrates the FLSA's broad remedial purposes and its specific grant of collective action rights to employees. *See Fisher v. Michigan Bell Tel. Co.*, 665 F. Supp. 2d 819, 828–29 (E.D. Mich. 2009).

As demonstrated by the pleadings and the detailed declarations submitted by Plaintiffs, the damages caused by Defendants' conduct are widespread among the putative collective. Accordingly, the Court should grant conditional certification and court-supervised notice to be sent to the Potential Opt-In Plaintiffs so that they can be informed of this lawsuit at this first notice stage.

**B.**    **The Sixth Circuit Applies a Lenient Standard When Conditionally Certifying an FLSA Collective Action.**

The FLSA requires covered employers to pay non-exempt employees not less than minimum wage for each hour worked and one-and-one-half times (1.5x) the employee's regular rate of pay for each hour worked in excess of forty hours per week. *Atkinson v. TeleTech Holdings,*

*Inc.*, No. 3:14-cv-253, 2015 WL 853234, at *2 (S.D. Ohio Feb. 26, 2015) (Rice, J.) (citing 29 U.S.C. §§ 206–07). The FLSA has a remedial objective, permitting aggrieved employees to bring claims individually or on behalf of other similarly situated employees, provided that the "opt-in" plaintiffs file notices of written consent to sue with the court. *See* 29 U.S.C. § 216(b). Its remedial objectives are furthered by awarding prevailing plaintiffs unpaid wages plus an additional amount for liquidated damages, reasonable attorneys' fees, and costs. *Atkinson*, 2015 WL 853234, at *2 (citing 29 U.S.C. § 216(b)).

"Courts within the Sixth Circuit generally apply a two-step procedure for determining whether an FLSA case should proceed as a collective action." *Betts v. Central Ohio Gaming Ventures, LLC*, No. 2:16-cv-373, 2018 WL 2316641, at *1 (S.D. Ohio Jan. 5, 2018) (Watson, J.) (citing *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546–47 (6th Cir. 2006)). Certification of the FLSA collective under Section 216(b) typically proceeds in two phases because unlike Federal Rule of Civil Procedure 23 class actions, the statute of limitations on FLSA claims continues to run until respective putative collective members file written consents with the court. *Funk v. Airstream, Inc.*, No. 3:17-cv-260, 2018 WL 2229141, at *4 (S.D. Ohio May 16, 2018) (Rice, J.); *Atkinson*, 2015 WL 853234, at *2 (citing *Lewis*, 789 F. Supp. 2d at 867); *Comer*, 454 F.3d at 546; *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 582–83 (6th Cir. 2009); *Monroe v. FTS USA, LLC*, 815 F.3d 1000, 1008 (6th Cir. 2016). Accordingly, it is important that notice of the collective action be given to all potential opt-in plaintiffs as soon as practicable so they can decide whether to participate in the lawsuit. In *Hoffmann-La Roche*, the Supreme Court praised the judicial benefits gained through collective action proceedings and recognized the importance of mandatory notice requirements. 493 U.S. at 165.

In recognition of the judicial efficiencies and cost-saving benefits of collective actions,

courts in the Sixth Circuit follow the two-step approach when deciding whether named plaintiffs are similarly situated for the purpose of certifying a collective action. *See O'Brien*, 575 F.3d at 582–83 (explaining that district courts follow a two-stage certification process to determine whether the opt-in plaintiffs and lead plaintiffs are similarly situated).

The Court has routinely granted conditional certification in cases involving similar allegations.[12]

### 1. *The Notice Stage*

The first stage, known as "conditional certification," occurs "prior to the completion of discovery and requires the plaintiff to make an initial showing that the employees in the proposed class are 'similarly situated.'" *Betts*, 2018 WL 2316641, at *2 (quoting 29 U.S.C. § 216(b)); *see also Brittmon v. Upreach, LLC*, 285 F. Supp. 3d 1033, at 1042 (S.D. Ohio 2018) (Watson, J.); *Wysincavage v. Penn Nat'l Gaming, Inc.*, No. 2:16-cv-1063, 2017 WL 5129003, at *2 (S.D. Ohio Oct. 23, 2017) (Watson, J.). At this stage, the court determines whether the suit should be "conditionally certified" as a collective action so that potential opt-in plaintiffs can be notified of the suit's existence and of their right to participate. *Comer*, 454 F.3d at 546–47; *see also Lacy v. Reddy Elec. Co.*, No. 3:11-cv-52, 2011 WL 6149842, at *2 (S.D. Ohio Dec. 9, 2011) (Rice, J.) ("Conditional certification is meant only to aid in identifying similarly situated employees."). This case is currently in the notice stage because the instant Section 216(b) motion was filed before the parties have completed any formal discovery.

At this initial stage, the Court "does not generally consider the merits of the claims, resolve factual disputes, or evaluate credibility." *Betts*, 2018 WL 2316641, at *2 (quoting *Myers v.*

---

[12] *See, e.g.*, Miller v. HG Ohio Employee Holding Corp., No. 2:21-cv-3978, 2022 WL 2526818, at *2, *9 (S.D. Ohio July 7, 2022) (Sargus, J.); Jones v. Converse Elec., Inc., No. 2:21-cv-01830, 2021 WL 5027411, at *1, *7 (S.D. Ohio Oct. 29, 2021) (Morrison, J.).

*Marietta Mem. Hosp.*, 201 F. Supp. 3d 884, 890 (S.D. Ohio 2016) (Marbley, J.)) (internal quotation marks omitted). Indeed, "[r]equiring any more factual support from Plaintiff at this early stage, or weighing [Defendants'] competing factual assertions, would intrude improperly into the merits of the action, essentially imposing a burden upon Plaintiff to prove the factual predicates of his claim as a precondition to obtaining preliminary conditional certification." *Lacy*, 2011 WL 6149842, at *3.

(a)    <u>Burden of Proof</u>

At this first stage of certification, a "plaintiff must only 'make a modest factual showing' that [she] is similarly situated to the other employees [s]he is seeking to notify." *Betts*, 2018 WL 2316641, at *2 (quoting *Comer*, 454 F.3d at 546–47) (internal quotation marks omitted). Additionally, named plaintiffs must only make a "modest showing" of being similarly situated, and this standard is satisfied if other employees' "causes of action accrued in approximately the same manner as those of the named plaintiffs." *Atkinson*, 2015 WL 853234, at *2 (citing *Lewis*, 789 F. Supp. 2d at 867–68) (internal quotations marks omitted); *see White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012). Application of this first-stage, "fairly lenient standard . . . typically results in conditional certification." *Atkinson*, 2015 WL 853234, at *2 (citing *Comer*, 454 F.3d at 547).

Individuals are "similarly situated" for purposes of the FLSA if their "causes of action accrued in approximately the same manner as those of the named plaintiffs." *Castillo v. Morales, Inc.*, 302 F.R.D. 480, 484 (S.D. Ohio 2014) (Marbley, J.); *see McCullen v. Toledo Country Club*, No. 3:18-cv-276, 2019 WL 90809, at *1 (N.D. Ohio Jan. 3, 2019) (alteration and emphasis in original) (internal quotation marks and further citation omitted) (finding that initial certification of a collective action only requires a named plaintiff to make a "modest factual showing" that the

plaintiff and other potential plaintiffs "suffer from a single, FLSA-violating policy *or* whose claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct"). In short, "the plaintiff must show only that 'his position is similar, not identical to the positions held by the putative class members.'" *Castillo*, 302 F.R.D. at 484 (quoting *Comer*, 454 F.3d at 546–47). The Court considers that issue "using a fairly lenient standard, and typically results in conditional certification of a representative class." *Id.* (quoting *Comer*, 454 F.3d at 546–47).

Courts regularly authorize conditional certification and notice to the putative collective members using a fairly lenient standard when named plaintiffs demonstrate that they are "similarly situated" to the other employees whom they seek to notify. *Sisson v. OhioHealth Corp.*, No. 2:13-cv-0517, 2013 WL 6049028, at *2 (S.D. Ohio Nov. 14, 2013) (Frost, J.). This Court, as well as other district courts in the Sixth Circuit, has recognized that the burden can be met solely upon allegations in the complaint. *See, e.g.*, *Hawkins v. Extended Life HomeCare Ltd.*, No. 2:18-CV-344, 2019 WL 952737, at *2 (S.D. Ohio Feb. 27, 2019) (Marbley, J.) (further citation omitted); *Creely v. HCR Manorcare, Inc.*, 789 F. Supp. 2d 819, 825 (N.D. Ohio 2011) (further citation omitted).

In light of the FLSA's remedial purpose, courts have repeatedly held that the similarly situated requirement of Section 216(b) must be interpreted generously to permit workers to collectively pursue their FLSA claims. *See Hipp v. Liberty Nat'l Ins. Co.*, 252 F.3d 1208, 1214 (11th Cir. 2001) ("We conclude the similarly situated requirement is not particularly stringent[.]"); *Garner v. G.D. Searle Pharm. & Co.*, 802 F. Supp. 418, 422 (M.D. Ala. 1991) (giving a rigorous inquiry into Section 216(b)'s similarly situated requirement "would unnecessarily hinder the development of collective actions and would undermine the 'broad remedial goals' of the

antidiscrimination provisions of the FLSA") (quoting *Hoffmann-La Roche*, 493 U.S. at 173.) Further, the Sixth Circuit has stressed that the Court should not apply a "Rule-23 type analysis" as to whether "individualized questions will predominate." *Wade v. Werner Trucking Co.*, No. 2:10-cv-00270, 2012 WL 5378311, at *4 (S.D. Ohio Oct. 31, 2012) (Sargus, J.) (quoting *O'Brien*, 575 F. 3d at 585–86).

Once a court determines a case is appropriate for conditional class certification, it approves notice to putative collective members. The Supreme Court has held that the benefits to the judicial system of collective actions "depend upon employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche*, 493 U.S. at 170.

In *Brandenburg v. Cousin Vinny's Pizza*, the Court conditionally certified an FLSA collection action and authorized notice in a scenario involving a parent company that owned and operated numerous limited liability companies. No. 3:16-cv-516, 2017 WL 3500411, at *1 (S.D. Ohio Aug. 15, 2017) (Rice, J.). As underscored by the Court when granting conditional certification for multiple entities after submission of one declaration and business documents, it is a "modest burden that Plaintiffs face at the conditional stage – demonstrating a 'factual nexus.'" *Id.* at *3–4. Similarly in this case, the proposed FLSA collective is comprised of similarly situated employees who worked at multiple facilities that are owned and operated by Defendants.

    (b)    Evidence Typically Accepted to Meet the "Similarly Situated" Test

To obtain conditional certification of her collective action, Named Plaintiff may rely on pleadings and supplementary materials such as affidavits and other supporting documents. *See Funk*, 2018 WL 2229141, at *5; *Shipes v. Amurcon Corp.*, No. 10-14943, 2012 WL 995362, at *4 (E.D. Mich. Mar. 23, 2012) ("[A]t this stage courts typically conditionally certify a representative

class because the court has only minimal evidence before it[.]"); *see also Lacy*, 2011 WL 6149842, at *2 ("No minimum number of similarly-situated employees is required for conditional certification."). Named Plaintiff has exceeded this burden.

Courts in the Sixth Circuit have rejected any requirement that plaintiffs demonstrate interest by potential opt-in plaintiffs in order to obtain court-facilitated notice. For example, in *Parker v. Breck's Ridge, LLC*, the Court stated clearly that there is "no requirement in the Sixth Circuit that a plaintiff seeking conditional certification first identify class members interested in joining the collective action." No. 2:17-cv-633, 2018 WL 551328, at *5 (S.D. Ohio Jan. 24, 2018) (Sargus, J.) (internal quotation marks omitted). There is no minimum number of similarly situated individuals and no minimum number of plaintiffs at the time of conditional certification necessary to warrant granting conditional certification as a collective action. *See De Angelis v. Nolan Enters., Inc.*, No. 2:17-cv-926, 2019 WL 6715975 (S.D. Ohio Dec. 10, 2019) (Marbley, J.) (granting conditional certification based on two declarations); *Smyers v. Ohio Mulch Supply, Inc.*, Case No. 2:17-cv-1110, 2019 WL 101905 (S.D. Ohio Jan. 4, 2019) (Marbley, J.) (granting conditional certification at all retail locations based on one declaration); *Funk*, 2018 WL 2229141, at *5 (granting conditional certification based on two declarations and five pay stubs "giving rise to a common theory of liability"); *Staggs v. Fuyao Glass Am., Inc.*, No. 3:17-cv-00191, 2018 WL 840178, at *2 (S.D. Ohio, Feb. 8, 2018) (Rose, J.) (granting conditional certification because the "allegations in the Complaint and Plaintiffs' declarations agree that Defendant's staff . . . are alleged to be victims of the same policy, decision, and practice to deny them overtime pay. This suffices to consider Plaintiffs and the putative collective members and subclass members are similarly situated for purposes of conditional certification."); *Brandenburg*, 2017 WL 3500411, *3–4 (granting conditional certification for multiple entities and locations based on one declaration

and business documents); *Ford v. Carnegie Mgmt. Servs., Inc.*, No. 2:16-cv-18, 2016 WL 2729700, at *2 (S.D. Ohio May 11, 2016) (Jolson, J.) (Court granted conditional certification for <u>all Ohio locations</u> based only upon <u>one declaration</u>); *Castillo*, 302 F.R.D. 480 (granting conditional and class certification for employees at <u>eight locations</u>, which operated under different entities, based on <u>two declarations</u>); *Sisson*, 2013 WL 6049028 (granting the motion for conditional certification when it was supported by <u>one declaration</u>); *Snelling v. ATC Healthcare Servs., Inc.*, No. 2:11-cv-00983, 2012 WL 6042839 (S.D. Ohio Dec. 4, 2012) (Sargus, J.) (granting the plaintiff's motion for conditional certification for nurses throughout the entire state of Ohio supported by <u>two declarations</u>). Nevertheless, Named Plaintiff and thirteen (13) Opt-In Plaintiffs have opted in to this lawsuit, and Named Plaintiff and seven (7) Opt-In Plaintiffs have presently submitted declarations in support of conditional certification. In addition, several employee handbooks have been submitted evidencing the same policies and/or practices.

Consequently, Named Plaintiff has exceeded the "fairly lenient" burden required at this early pre-discovery notice stage, which typically results in conditional certification. *Funk*, 2018 WL 2229141 at *4; *see Osman v. Grube, Inc.*, No. 16-cv-802, 2017 WL 2908864, at *6 (N.D. Ohio July 7, 2017); *McCullen*, 2019 WL 90809, at *2. Furthermore, the fact that Defendants uniformly apply these pay policies and/or practices to all of their healthcare employees means that the damages are widespread. *Funk*, 2018 WL 2229141, at *5; *Atkinson*, 2015 WL 853234, at *2; *Lewis*, 789 F. Supp. 2d at 868; *Heaps v. Safelite Sols., LLC*, No. 2:10 CV 729, 2011 WL1325207, at *2 (S.D. Ohio Apr. 5, 2011) (Frost, J.).

(c)    <u>Remedial Purpose of the FLSA</u>

In 29 U.S.C. § 216(b), "Congress has stated its policy that . . . plaintiffs should have the opportunity to proceed collectively." *Hoffmann-La Roche*, 493 U.S. at 170. After all, "[a]

collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources." *Id.*; *see also LaFleur v. Dollar Tree Stores, Inc.*, No. 2:12-cv-00363, 2014 WL 934379, at *10 (E.D. Va. Mar. 7, 2014) ("Each individual plaintiff would be unlikely to pursue his or her claim alone due to the costs involved relative to the damages sought."). That pooling should be encouraged because "[t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged activity." *Hoffmann-La Roche*, 493 U.S. at 170. The bottom line was clearly stated in *Hoffmann-La Roche*: "[t]he broad remedial goal of the statute should be enforced to the full extent of its terms." *Id.* at 173.

Although the universe of Potential Opt-In Plaintiffs is unknown at this time, conditional certification is appropriate because adjudicating these relatively small cases individually rather than in a collective forum would be costly and inefficient.

(d)    Another Purpose of Expeditious Notice Is to Preserve Claims

For purposes of authorizing notice during the early stages of litigation, a court need only make a preliminary determination of whether there exists a collective of potential similarly situated individuals. *Perez v. A+ Building Maint. and Home Repair, LLC*, No. 3:17CV01261, 2018 WL 2002420, at *3 (N.D. Ohio Apr. 30, 2018); *Olivo v. GMAC Mortg. Corp.*, 374 F. Supp. 2d 545, 547–48 (E.D. Mich. 2004). As stated in *Sperling v. Hoffmann-LaRoche, Inc.*:

> [N]otice to absent class members need not await a conclusive finding of similar situations. To impose such a requirement would condemn any large class claim … to a chicken-and-egg limbo in which the class could only notify all its members to gather together after it had gathered together all its members, and from which the class could escape only by refusing entry after some unpublicized cutoff date to additional class members who thereafter stumble upon the case by themselves.

118 F.R.D. 392, 406 (D.N.J. 1988), *aff'd*, 862 F.2d 439 (2d Cir.), *aff'd*, 493 U.S. 165 (1989).

The court concluded that allowing notice to be sent prior to a final decision on the similarly

situated element would assure that the decision made after absent members had opted in would be "informed, efficiently reached, and conclusive." *Id*. Further, the FLSA statute of limitations is only two (2) years and extended to three (3) for a willful violation. 29 U.S.C. § 255(a). The statute of limitations continues to run on the Potential Opt-In Plaintiffs' claims. Therefore, it is imperative that the Potential Opt-In Plaintiffs receive notice expeditiously.

C.  **When Deciding Motions for Conditional Certification, Courts within the Sixth Circuit Do Not Evaluate the Merits of the Claims or Individualized Allegations or Defenses.**

Consistent with the purpose of Section 216(b) Notice, in making the determination of whether a group of similarly situated individuals exists, the Court need not—and should not—evaluate the merits of Named Plaintiff's claims. *Morris v. Nationwide Children's Hosp.*, No. 2:20-cv-3194, 2021 WL 320740, at *4 (S.D. Ohio Feb. 1, 2021) (Morrison, J.) (further citation omitted); *Hamm v. S. Ohio Med. Ctr.*, 275 F. Supp. 3d 863, 869 (S.D. Ohio 2017) (Black, J.); *Hughes v. Gulf Interstate Field Servs., Inc.,* No. 2:14–CV–432, 2015 WL 4112312, at *4 (S.D. Ohio July 7, 2015) (Sargus, J.) ("But, determination of whether Plaintiffs and others similarly situated qualify as exempt employees under the FLSA is a merits determination that will be considered at the second phase of certification, not at this initial conditional inquiry."); *see also Creely,* 789 F. Supp. 2d at 826 (noting that the question of whether the proposed class is "similarly situated . . . does not touch upon the merits of plaintiffs' claims"). Indeed, the court "typically do[es] not consider the merits of the plaintiff's claims, resolve factual disputes, make credibility determinations, or decide substantives issues" when ruling on a motion for conditional certification. *Osman*, 2017 WL 2908864, at *6 (alteration in original) (internal quotation marks and further citation omitted).

Likewise, courts in the Sixth Circuit generally do not deny conditional certification at the notice stage based on allegations that the parties' claims or defenses are too individualized and

instead hold that these issues are better raised in a motion to decertify a class after discovery has concluded. *Parker*, 2018 WL 551328, at *2 (citing *Ford*, 2016 WL 2729700, at *2); *Snelling*, 2012 WL 6042839, at *2. "The Sixth Circuit has provided that one example of an appropriate FLSA collective action is where the potential plaintiffs are 'unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct. Nevertheless, '[s]howing a "unified policy" of violations is not required[.]'" (some alteration in original) (quoting *O'Brien*, 575 F.3d at 584–85.); *Shipes*, 2012 WL 995362, at *7 ("Once plaintiffs meet their burden at the notice stage, a defendant cannot overcome their showing by arguing that individual issues predominate."); *Shabazz v. Asurion Ins. Serv.*, No. 3:07-cv-0653, 2008 WL 1730318 (M.D. Tenn. Apr. 10, 2008) (discussing how employer's assertions regarding differences in its call centers and the different types of classifications given to employees who handle calls from customers are arguments more appropriately raised at the decertification stage of a collective action); *Crawford v. Lexington-Fayette Urban Cnty. Gov't*, No. 06-cv-299, 2007 WL 293865 (E.D. Ky. Jan. 26, 2007) (stating that the prospect of individual defenses does not defeat certification at the notice stage as such arguments are appropriate at the decertification stage); *White v. MPW Indus. Serv., Inc.*, 236 F.R.D. 363, 372–73 (E.D. Tenn. 2006) (rejecting the notion that the Motor Carrier Act exemption required an individual analysis at the first stage of certification).

### D.    This Court Should Approve the Proposed Notice and Process.

The ultimate goal of the Court is to provide "accurate and timely notice concerning the pendency of the collective action" because it "promotes judicial economy." *Swigart v. Fifth Third Bank*, 276 F.R.D. at 214 (S.D. Ohio 2011) (Dlott, J.) (citing *Hoffmann-La Roche*, 493 U.S. at 170). For the purposes of advancing the remedial objectives of the FLSA, "the current nationwide trend" is to permit notice to be sent via regular U.S. mail and email to all potential plaintiffs. *Atkinson*,

2015 WL 853234, at *5 (citing *Petty*, 2014 WL 1308692, at *6); *see Osman*, 2017 WL 2908864, at *7 ("I find that using both methods will increase the change that potential plaintiffs will be notified by at least one method of notice."). Indeed, "the trend in this Court, however, is to allow notice by mail and email to ensure that putative class members receive notice of the pending action." *Parker*, 2018 WL 551328, at *6 (citing *Wysincavage*, 2017 WL 5129003, at *7); *see also Conklin v. 1-800 Flowers.com, Inc.*, No. 2:16-cv-675, 2017 WL 3437564, at *5 (S.D. Ohio Aug. 10, 2017) (Marbley, J.) ("[E]mail notice 'appears to be in line with the current nationwide trend' and 'advances the remedial purpose of the FLSA, because service of the notice by two separate methods increases the likelihood that all potential opt-in plaintiffs will receive notice of the lawsuit.'" ). This Court recently reaffirmed its belief in the importance of two (2) forms of notice being sent to putative collective members.[13] In *Pyfrom*, the defendants failed to provide email addresses for the vast majority of the putative collective members.[14] This failure made the issuance of notice by email impossible for those individuals, and they could therefore only receive, at most, one (1) form of notice. To remedy this departure from the Court's order granting conditional certification with the understanding that the notice would be distributed by two (2) separate methods, this Court allowed for notice by text message to be issued to those individuals lacking email addresses in order to ensure that two (2) forms of notice were distributed to the putative collective.[15]

The Court should conditionally certify the following collective:

**All current and former hourly, non-exempt direct care employees of Defendants who had a meal break deduction applied to their hours**

---

[13] *See* Pyfrom v. ContactUS, LLC., No. 2:21-cv-4293, 2022 WL 11624210, at *1 (S.D. Ohio Oct. 18, 2022) (Sargus, J.) ("By authorizing two methods of service, the Court 'advances the remedial purpose of the FLSA.'").

[14] *Id.* at *2.

[15] *Id.*

**worked in any workweek where they were paid for at least forty (40) hours of work, beginning three (3) years prior to the filing date of this Motion and continuing through the final disposition of this case.**

Named Plaintiff requests that this Court authorize sending of the attached Proposed Notice and Consent to Join forms (**Exhibit 1**) to all Potential Opt-In Plaintiffs so as to provide them a meaningful opportunity to understand their rights and to join this litigation if they so choose:

> a. The Proposed Notice is "timely, accurate, and informative," and therefore should be approved. *Hoffmann-La Roche*, 493 U.S. at 172.

> b. Defendants should be ordered to produce a list, in electronic and importable format, of all Potential Opt-In Plaintiffs, including their full names, their dates of employment, their locations worked, their last known mailing addresses, cellular phone numbers, and personal email addresses. Courts routinely require defendants to produce this information when granting conditional certification motions.[16]

> c. The Court should allow the notice to be sent to the putative collective members by first class mail and email, and to the extent that less than two (2) methods of contact have been provided by Defendant for the putative collective members, the Court should allow the notice to be sent by (1) text message and (2) first class mail or email, whichever is available, so as to remain consistent with the tradition of notice by two methods. Federal jurisprudence in the Sixth Circuit regularly allows simultaneous dual notice by ordinary mail and electronic mail to be sent to the putative collective members in the interest of judicial economy,[17] and the growing nationwide trend is to allow notice by text.

## IV. **CONCLUSION**

For the reasons explained above, Named Plaintiff respectfully requests that this Court grant her pre-discovery Motion and provide the relief requested herein.

---

[16] *See Funk*, 2018 WL 2229141, at *5–6.

[17] *See* Honaker v. Wright Bros. Pizza, Inc., No. 2:18-cv-1528, 2020 WL 134137, at *3 (S.D. Ohio Jan. 13, 2020) (Marbley, J.) (further citation omitted) ("The trend in the Southern District of Ohio, however, 'is to allow notice by mail and email to ensure that putative class members receive notice of the pending action.'").

Respectfully submitted,

**COFFMAN LEGAL, LLC**

*/s/ Matthew J.P. Coffman*
Matthew J.P. Coffman (0085586)
Adam C. Gedling (0085256)
Kelsie N. Hendren (0100041)
Tristan T. Akers (0102298)
1550 Old Henderson Rd.
Suite 126
Columbus, Ohio 43220
Telephone: (614) 949-1181
Facsimile: (614) 386-9964
Email: mcoffman@mcoffmanlegal.com
agedling@mcoffmanlegal.com
khendren@mcoffmanlegal.com
takers@mcoffmanlegal.com

*Attorneys for Named Plaintiff and those similarly situated*

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of March 2023, a true and accurate copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Matthew J.P. Coffman*
Matthew J.P. Coffman