UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DONNA GIFFORD,

          Plaintiff,      :

  v.                                Case No. 2:22-cv-4389
                                  Judge Sarah D. Morrison
                                  Magistrate Judge Chelsey M.
NORTHWOOD HEALTHCARE        Vascura
GROUP, LLC, *et al.*,            :

          Defendants.

**OPINION AND ORDER**

Donna Gifford filed this action against her former employers, Northwood Healthcare Group, LLC and Garden Healthcare Group, LLC, for alleged violations of the Fair Labor Standards Act ("FLSA") and Ohio's wage and hour laws. (ECF No. 1.) The matter is now before the Court on Defendants' Motion for Reconsideration (ECF No. 88); Ms. Gifford's Motion for Approval of Revised Notice (ECF No. 85); and Ms. Gifford's Motion for Order to Invalidate Arbitration Agreements (ECF No. 51). All three motions are fully briefed and ripe for review. Each addresses a distinct aspect of this litigation. As a result, the Court will summarize the relevant background as necessary in the discussion below.

**I.    MOTION FOR RECONSIDERATION**

Ms. Gifford asserts her claims on behalf of herself and "all other similarly situated employees" of Defendants. (Compl., ECF No. 1.) *See also* 29 U.S.C. § 216(b), Fed. R. Civ. P. 23. She previously sought the Court's approval to notify other

Potential Plaintiffs of the case.[1] (ECF No. 29.) In an August 21, 2023 Opinion and Order, the Court found that Ms. Gifford had demonstrated a strong likelihood that she is similarly situated to the Potential Plaintiffs, paving the way for Ms. Gifford to notify them of the opportunity to opt into this litigation. (August 21 Opinion, ECF No. 83.)

Defendants now ask the Court to reconsider its August 21 Opinion on the grounds that "the Court erred when it did not even address, let alone grant, Defendants' request for limited discovery followed by an evidentiary hearing." (ECF No. 88.) Ms. Gifford opposes. (ECF No. 90.) For the reasons below, the Motion for Reconsideration is **DENIED**.

### A. Legal Standard

District courts may reconsider interlocutory orders prior to final judgment. *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004); *see also* Fed. R. Civ. P. 54(b). "Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez*, 89 F. App'x at 959. But a motion for reconsideration should not "be used as a vehicle for mere disagreement with a district court's opinion." *Nayyar v. Mt. Carmel Health Sys.*, No. 2:10-CV-00135, 2014 WL 619394, at *3 (S.D. Ohio Feb. 18, 2014) (Marbley, J.).

---

[1] "Potential Plaintiffs" has the same meaning ascribed to that term in the August 21, 2023 Opinion and Order. (August 21 Opinion, PAGIED # 2234.)

2

B.   Analysis

Defendants argue that this Court committed clear error by declining to address their request for discovery and an evidentiary hearing before deciding that Ms. Gifford met her burden on the Motion. (ECF No. 88.) They assert that the Court's decision—having been made without special discovery or a hearing—works a manifest injustice upon them. (*Id.*)

Defendants' position is unsupported by any law. The Sixth Circuit's recent decision in *Clark v. A&L Homecare & Training Ctr., LLC* permits, but does not require, district courts to order discovery before ruling on a motion for court-authorized notice. 58 F.4th 1003, 1011 (6th Cir. 2023) ("[A] district court may promptly initiate discovery relevant to the motion[.]").

It is true, the Court did not explicitly acknowledge Defendants' request for discovery and a hearing in the August 21 Opinion. But that is because those proceedings were not necessary to decide the motion. Further, Defendants' "request" for discovery was made only in passing. (ECF No. 68, PAGEID # 955.) Their "request" for an evidentiary hearing was slightly more robust, consisting of twelve lines in their Sur-Reply to Ms. Gifford's Motion for Court-Authorized Notice:

> Multiple material facts remain in dispute including (1) whether Northwood and Garden and the separate entities that actually employ the putative collective members are joint employers and/or a single integrated enterprise; (2) whether the potential opt-in plaintiffs are subject to a "companywide" policy since they work for separate employers that have different administrators, different human resource representatives, different immediate supervisors, and different meal break policies; and (3) whether the Declarants have personal knowledge related to how the meal break policies were actually administered at these myriad facilities and how the putative collective members were actually paid by these myriad facilities. Based on these "bitterly

> contested" facts, the Court should hold an evidentiary hearing where it can hear testimony and make credibility determinations to decide whether Gifford has met the "strong likelihood" standard. *See, Certified Restoration Dry Cleaning Network, LLC*, 511 F.3d at 552-53.

(ECF No. 68, PAGEID # 961.) But that "material facts remain[ed] in dispute" at such an early stage of litigation was no surprise, and did not warrant further delay in deciding the motion. *See Clark*, 68 F.4th at 1011 (instructing district courts to "expedite their decision" on a motion to notify potential plaintiffs, citing the FLSA's limitations period).

The same three items so briefly referenced in the above quote form the basis for Defendants' thirteen-page motion seeking reconsideration. (*See* ECF No. 88, PAGEID # 2267 ("1. Disputes of Material Fact Exist over Whether Plaintiff Presented Evidence that She and the Potential Opt-In Plaintiffs Were Subject to a "Companywide" Policy that Violated the FLSA."), PAGEID # 2269 ("2. Disputes of Material Fact Exist over Whether an FLSA-Violating Policy Existed at the Six Facilities Where the Declarants Worked."), PAGEID # 2271 ("3. Disputes of Material Fact Exist over Whether the Working Conditions and Meal Break Policies Exist at Each of the 14 Facilities.").) But motions for reconsideration do not allow a losing party to simply repeat or expand upon arguments already made. *See Doe v. Ohio State Univ.*, 323 F. Supp. 3d 962, 965 (S.D. Ohio 2018) (Smith, J.).

The bottom line is this: The Court found that Ms. Gifford met her burden to show a strong likelihood that she was similarly situated to the Potential Plaintiffs, and Defendants wish it had found otherwise. Defendants raise no proper grounds

4

for reconsidering the August 21 Opinion. The Motion for Reconsideration is **DENIED**.

## II. MOTION FOR APPROVAL OF REVISED NOTICE

In its August 21 Opinion, the Court rejected Ms. Gifford's proposed Notice and Consent to Join. (August 21 Opinion, PAGEID # 2240.) Ms. Gifford was ordered to resubmit the documents with certain changes responsive to Defendants' objections. (*Id.*) Ms. Gifford did so, and asked the Court to approve the revisions. (ECF No. 85.) The Court ordered an expedited response, noting that no reply brief would be permitted. (ECF No. 87.) In doing so, the Court assumed that Defendants would limit their objections to the new (revised) language in the form Notice. Instead, Defendants responded with a brand-new set of objections to language unchanged from the first review. Defendants now oppose the Notice's definition of the Potential Plaintiffs and identification of opt-in plaintiffs. (ECF No. 89.) These were included in the *first* proposed Notice, to which Defendants did not object during the *first* round of briefing, and to which they will not be allowed to object now. *Cf. Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013) (explaining that "arguments not raised in a party's opening brief . . . are waived").

The Motion for Approval of Revised Notice and Consent to Join is **GRANTED**, subject to the addition of corrective language specified below. The Notice and Consent to Join must be distributed in a manner consistent with the August 21 Opinion. Defendants are **ORDERED** to produce the names and contact information for the Potential Plaintiffs **within fourteen days**.

### III. MOTION TO INVALIDATE ARBITRATION AGREEMENTS

Finally, Ms. Gifford seeks to remedy any potential harm done by Defendants' decision to circulate new arbitration agreements to Potential Plaintiffs during the pendency of this litigation. (ECF Nos. 51, 76.) Ms. Gifford requests (i) invalidation of any arbitration agreements entered into since the lawsuit was filed, (ii) a corrective notice to the Potential Plaintiffs, and (iii) costs associated with distributing a corrective notice.[2] Her Motion is **GRANTED in part** and **DENIED in part**.

#### A. Procedural Background

Ms. Gifford filed her Complaint on December 15, 2022. (ECF No. 1.) Two months later, Defendants filed a Motion to Compel Arbitration and Stay Proceedings. (ECF No. 19.) On April 10, 2023, this Court denied the motion because the Arbitration Clause Ms. Gifford supposedly signed was facially deficient. (ECF No. 36.) Four days later, Ms. Gifford filed a Motion for Temporary Restraining Order and Preliminary Injunction, asserting that Defendants were requiring employees to sign a *new* Arbitration Agreement that purported to cover "any Claim that arose and/or was filed prior to [the] Agreement and Claims that are currently the subject of any purported putative class, collective, consolidated, or representative action litigation." (ECF No. 39. *See also* New Arbitration Agreement,

---

[2] Ms. Gifford also requests "attorney's fees and costs related to [her] Motion for TRO, the expedited discovery, and all briefing associated with" the Motion to Invalidate. (ECF No. 67, PAGEID # 2168.) This request is unaccompanied by any effort at developed argument regarding why she is entitled to these items and, thus, is deemed waived. *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997).

6

ECF No. 51-1, PAGEID # 510.) The New Arbitration Agreement concluded with the following:

> I understand that if I do not sign this Agreement, I would not be entitled to employment or continued employment with COMPANY.

(New Arbitration Agreement, PAGEID # 511.) Ms. Gifford sought a Court order enjoining Defendants "from further requiring their hourly, non-exempt employees to sign the Arbitration Agreement (or any variations thereof) that would extinguish their right to join this ongoing litigation as an express condition of their continued employment." (ECF No. 39, PAGEID # 422.)

The Court granted Ms. Gifford's motion at a conference on April 19, 2023. In the Order memorializing its oral ruling, the Court enjoined:

> Defendants, both directly and indirectly, by or through their respective entities at their various facilities, [from] requiring, or otherwise soliciting, their current and former hourly, non-exempt employees to sign arbitration agreements purporting to cover the claims alleged in this litigation.

(ECF Nos. 47, 54.) The Court also allowed the parties to engage in limited discovery on the New Arbitration Agreement's impact on Potential Plaintiffs. (*Id.*)

After the limited discovery was complete, Ms. Gifford filed a supplemental brief in support of her Motion to Invalidate (ECF No. 76), to which Defendants responded (ECF No. 81), and Ms. Gifford replied (ECF No. 81).

### B.   Factual Background

The limited discovery revealed several facts relevant to Ms. Gifford's Motion.

First: Before March 16, 2023, some of Defendants' facilities offered arbitration agreements (the "Original Arbitration Agreement") to their new hires.

7

(Butt Dep., ECF No. 75-1, 50:4–8.) After being repeatedly photocopied, the left-hand text of the Original Arbitration Agreement became illegible. (*Id.*, 51:18–21.)

On March 16, 2023, Jessica Butt (Garden and Northwood's Vice President of Operations) emailed the facility administrators with re-typed new-hire paperwork. (ECF No. 75-25.) The email says:

> Hello Admins
>
> Attached is our new hire paperwork that needs implemented asap. You need to add your facility Name/Logo in the header and save. Please replace your forms with this. ANY active employee that has not previously signed an arbitration agreement, needs to sign on now. You will see open pages and what needs added to those open pages, etc competencies, W9, etc.
>
> Please print this with every hire, INSTEAD of running copies over and over again where it ends up crooked.

(*Id.*, PAGEID# 1546.) The attached paperwork includes the following re-typed version of the Original Arbitration Agreement:

> Any new controversies or claims arising out of or relating to employee's employment, including without limitation disputes under Title VII, of the AEDA, the ADA and other State or Federal Discrimination or Employement Laws, shall be settled by arbitraytion in Ohio, in accordance with the employment dispute rules then court having jursidiction thereof. The parties shall be free to pursue any remedy before the Arbitrator and that they shall otherwise be permitted to pursue in a court of competent jursidiction. The award of the Arbitrator shall be final and bindinng. The costs of the Arbritration shall be borne equally by the Employer and Employee.

(*Id.*, PAGEID # 1579 (reproduced as written).)

Three weeks later, on April 3, 2023, Ms. Butt sent another email to the facility administrators. (ECF No. 75-16.) This one, marked "high" importance, stated:

8

> Hello Admins
>
> Please find attached our new employee arbitration agreement. Each facility has their own. Please make sure you only use the one with your facility name !
>
> You, as the administrator, will sign as the company. (NOT HR)
>
> This needs implemented in your new hire paperwork today. In addition, we need ALL current employees to sign by end of week.
>
> Please reach out asap if you have any questions. Otherwise, please confirm by end of week that all employees have signed this.

(*Id.*, PAGEID # 1499.) Attached was a copy of the New Arbitration Agreement. (*Id.*)

Since that time, Defendants have collected nearly 300 signed New Arbitration Agreements.[3] (ECF No. 67, PAGEID # 2160.)

### C. The Court declines to invalidate all Arbitration Agreements signed after the litigation was filed.

Any district court overseeing an FLSA collective action has "both the duty and the broad authority to exercise control over [that] action and to enter appropriate orders governing the conduct of counsel and the parties." *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 171 (1989) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1981)). This well-settled law stems from the recognized "potential for abuse" and "misuse of the [collective] device[.]" *Id.* But the court's discretion is not boundless. When it comes to restricting communications between the parties, a court's control over the litigation must not encroach on the parties' protected speech. *See Fox v. Saginaw Cty., Mich.*, 35 F.4th 1042, 1047 (6th Cir. 2022). As a

---

[3] Ms. Gifford asserts that documents produced to her in discovery supports that 297 New Arbitration Agreements were signed. (*See* ECF No. 67, PAGEID # 2160 fn. 99.) Those documents were not provided to the Court for review. Defendants, however, do not dispute the figure.

9

result, orders limiting future communications, or remedying the effect of prior communications, must "be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil*, 452 U.S. at 101.

Ms. Gifford does not ask this Court to restrict future communications through a protective order. Instead, she asks the Court to conclude that all Arbitration Agreements entered into while this litigation was pending between Defendants and Potential Plaintiffs are unconscionable and unenforceable. Although the Court neither condones nor appreciates Defendants' conduct with respect to the New Arbitration Agreement, Ms. Gifford fails to carry her burden to establish that every agreement she asks to invalidate is both substantively and procedurally unconscionable.

A contract's enforceability is generally a matter of state law—of which, the parties cite none. Despite the parties' collective failure to address it, Ohio law[4] does

---

[4] The New Arbitration Agreement does not contain any explicit choice-of-law provision. The Ohio Supreme Court has adopted the Restatement (Second) of Conflict of Laws for determining contract choice-of-law issues in such cases. *Gries Sports Enters., Inc. v. Modell*, 473 N.E.2d 807, 808 (syllabus) (Ohio 1984). Thus, in the absence of an effective choice of law by the parties, the contacts to be taken into account to determine the law applicable to an issue include: the place of contracting; the place of negotiation; the place of performance; the location of the subject matter; and the domicile, residence, nationality, place of incorporation and place of business of the parties. *Id*. (quoting Restatement (Second) of Conflict of Laws § 188(2)). The record indicates (and no party has argued otherwise) that all of Defendants' facilities are located in Ohio, and that all work performed by Ms. Gifford and the Potential Plaintiffs was done at those Ohio facilities. Further, the New Arbitration Agreement cites the Ohio Revised Code, references proceedings under the Ohio Civil Rights Commission, and states that any arbitration will take place in Ohio. (*See* ECF No. 39-1.) The Court concludes, therefore, that Ohio bears the most significant relationship to the New Arbitration Agreement.

10

provide that an unconscionable contract is unenforceable. *See Spangler v. Spangler*, 451 F. Supp. 3d 813, 823 (N.D. Ohio 2020). Ohio law provides a test for determining whether a contract is unconscionable, with fact-based considerations to explore and a whole body of case law behind it. *See also* 18 Ohio Jur. 3d Contracts III.A.3., § 79 *et seq*. Ms. Gifford does not provide argument or evidence that would permit the Court to engage in that analysis. *See Spangler* at 823 (quoting *Taylor Bldg Corp. of Am. v. Benfield*, 884 N.E.2d 12, 20 (2008)) ("The party asserting unconscionability of a contract bears the burden of proving that the agreement is both procedurally and substantively unconscionable.").

Nonetheless, Defendants have put on the record that they will not "utilize or enforce in this litigation any Original Arbitration Agreement or New Arbitration Agreement that was executed by a then-current employee after March 16, 2023." (ECF No. 81, PAGEID # 2207.) The Court will hold Defendants to their word. *Cf. Billingsley v. Citi Trends, Inc.*, 560 F. App'x 914, 922 (11th Cir. 2014) (upholding a decision to invalidate abusive post-litigation-commencement arbitration agreements on the grounds that "the arbitration agreement by their terms will directly affect this lawsuit" and so "the district court had authority to prevent abuse and to enter appropriate orders governing the conduct of counsel and the parties").[5]

---

[5] The district court in *Billingsley* engaged in an extensive unconscionability analysis under Georgia law. *See Billingsley v. Citi Trends, Inc.*, 948 F. Supp. 2d 1287, 1293–1300 (N.D. Ala. 2013).

11

### D. Corrective language must be included in the Notice to Potential Plaintiffs.

Ms. Gifford also asks the Court to authorize the distribution of a corrective notice to the Potential Plaintiffs, intended to remedy the effects of Defendants' misconduct. "To warrant a Court approved corrective notice, . . . the moving party[] bears the burden of showing that the Defendants' communication was in some way coercive, misleading, or improper." *Jackson v. Papa John's USA, Inc.*, No. 1:08-CV-2791, 2009 WL 650181, at *3 (N.D. Ohio Mar. 10, 2009). Ms. Gifford has met her burden.

Ms. Gifford filed her Complaint on December 15, 2022. (ECF No. 1.) The Complaint includes § 216(b) collective allegations. (*See, e.g., id.*, PAGEID # 1 ("The FLSA claim is brought as a collective action pursuant to 29 U.S.C. § 216(b).")) Defendants were served with process by the end of January, 2023. (ECF No. 17.) Defendants appeared in the case on February 15, by filing their Motion to Compel Arbitration. (ECF No. 19.) In that Motion, they acknowledged that Ms. Gifford asserted claims on behalf of herself "and other similarly situated employees[.]" (*Id.*, PAGEID # 87.)  By the time it was filed, ten opt-in plaintiffs had filed their consent forms. (ECF Nos. 2, 3, 4, 6, 8, 9, 10, 11, 12, 18.)

On March 16, Ms. Butt circulated a re-typed version of the Original Arbitration Agreement to facility administrators with instructions to implement for new hires "asap" and an admonition that "ANY active employee that has not previously signed an arbitration agreement, needs to sign on now." (ECF No. 75-25, PAGEID # 1546.)

12

Just three weeks later, on April 3, Ms. Butt plotted an urgent new course. She sent a high-priority email to the facility administrators with a "new employee arbitration agreement," and said:

> This needs implemented in your new hire paperwork today. In addition, we need ALL current employees to sign by end of week.
>
> Please reach out asap if you have any questions. Otherwise, please confirm by end of week that all employees have signed this.

(ECF No. 75-16, PAGEID # 1499.)

By its terms, this New Arbitration Agreement required Defendants' employees to sign away any right they might have to join this case. Defendants made no effort to inform Potential Plaintiffs that, by signing, they could be giving up their right to participate in this litigation. Although Ms. Gifford had requested the Court's permission to notify all Potential Plaintiffs of the case (ECF No. 29), the Court had not ruled on the motion. In other words, Defendants knew something that the Potential Plaintiffs didn't—and they sought to exploit that asymmetric information. Their omission constitutes misleading and improper communication. Defendants' conduct was abusive of the collective device and anathema to the FLSA. A corrective notice is appropriate.

However, Ms. Gifford's proposed corrective notice is **NOT APPROVED**. Instead, Ms. Gifford is **ORDERED** to insert the following paragraph into the form Notice and Consent to Join, immediately below the "Why is this notice being sent?" section:

13

**What if I signed an Arbitration Agreement?**

You may have recently been asked to sign an "Arbitration Agreement" at your workplace/facility. This document might have stated that you were giving up your right to participate in any lawsuit related to your employment, including any pending lawsuits. But Defendants did not inform you about *this* lawsuit before asking you to sign the Arbitration Agreement. The Court found that to be misleading and improper. As a result, you may still be eligible to join this lawsuit even though you signed an Arbitration Agreement.

Because the corrective notice is being included in the form Notice and Consent to Join, Ms. Gifford's request for costs associated with distributing the corrective notice is **DENIED as moot**.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion for Reconsideration is **DENIED**.

Ms. Gifford's Motion for Approval is **GRANTED** and the proposed Notice and Consent to Join are **CONDITIONALLY APPROVED**, pending the revision specified in this Opinion and Order. Defendants are **ORDERED** to produce names and contact information for the Potential Plaintiffs **within fourteen days.**

Finally, Ms. Gifford's Motion to Invalidate Arbitration Agreements is **GRANTED in part** and **DENIED in part**.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**